Barry Flegenheimer
BELL FLEGENHEIMER
119 1ST Ave. S., Suite 500
Seattle, Washington 98104
(206) 621-8777
barrylfp@gmail.com

Attorney for Kenneth Currin Schuchman

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>                      Plaintiff,<br><br>   v.<br><br>KENNETH CURRIN SCHUCHMAN,<br><br>                      Defendant. | NO. 3:18-cr-00095-TMB-DMS<br><br>DEFENDANT'S SENTENCING MEMORANDUM |

## I. INTRODUCTION.

Kenneth ["Kenny"] Schuchman, through counsel, Barry Flegenheimer, requests that the Court impose a sentence of 12-months and a day imprisonment, 3-years supervised release, and 18-months community confinement as a special condition of supervised release.[1] This supervised release condition will require Kenny to enter into and complete Akeela's inpatient

---

[1] By the sentencing date, Kenny will have served approximately 11-months in custody. If the parties' recommendation is adopted by the Court, the sentence would be a credit-for-time-served sentence and Kenny would be eligible for transfer to either Akeela House Recovery Center ["Akeela"] or a Residential Reentry Center with a transfer to Akeela upon the first open bed space.

DEFENDANT'S SENTENCING
MEMORANDUM
*[No. 3:18-cr-00095-TMB-DMS]* - 1

treatment program.[2]  This is an agreed sentencing recommendation offered to the Court by both the Government and Kenny Schuchman.

In his young life, Kenny has faced a number of overwhelming developmental, mental health, social and emotional obstacles and adverse experiences.  Consistent with and in addition to those difficulties, as a teenager, Kenny developed a co-occurring catastrophic substance abuse problem.  For reasons comprehensively discussed in Dr. Hower Kwon's attached Forensic Psychiatric Evaluation, Kenny has acted impulsively and self-destructively. This maelstrom of difficulties has substantially contributed to Kenny's offense and pretrial non-compliance behavior.

Kenny is young and capable of change. If the Court mandates in-patient treatment and the other recommended special supervised release conditions, which largely track Dr. Kwon's recommendations, Kenny will be required to make these changes.  As reflected in his attached statement, Kenny has learned from this drawn out experience, understands the ramifications of his wrongdoing, and is prepared to meet the challenge.

The agreed recommendation is fair and appropriately serves the sentencing objectives of 18 U.S.C. § 3553(a) and is "sufficient, but not greater than necessary." *Gall v. United States,* 552 U.S. 38, 46, n.2 (2007) (*citing* 18 U.S.C. § 3553(a)).

## II. DISCUSSION.

### A. *Personal Background.*

---

[2] The program provides 9 to 18-months inpatient substance abuse treatment. The average stay is 10-months. Kenny has been accepted into Akeela and can commence the inpatient program on August 1, 2020.

Kenny's problems started before his birth and have continued and multiplied throughout his young life. He has an unusual and profound array of developmental, mental, social and emotional disabilities. Kenny has been diagnosed as suffering from Autism Spectrum Disorder, various mental health disorders, and substance abuse disorder. These disorders have dramatically impacted his life and have been manifested pervasively in Kenny's thoughts and behaviors.

Kenny has an odd demeanor. He appears anxious. He has trouble looking a person in the eye. He inappropriately laughs and interrupts during conversations. He has no friends. He had no social activities. Throughout his life, listeners lacking grace and patience have had responses to Kenny ranging from bafflement to derision to anger. Kenny has a reported history of having difficulty focusing attention, paranoid thinking, cognitive rigidity and tics. Kwon, at 3 and 5.

To Kenny, the world is a chaotic place. Stimulation and stress, at levels that would not bother most people, cause him to panic and have resulted in Kenny being taken to the emergency room multiple times while on pretrial release. He has a history of hospitalizations for self-injurious behavior. Kwon, at 4.

Kenny is socially naïve and fails to grasp social nuance. Or, as described by Dr. Kwon, "Kenneth's records indicate that he has been experiencing difficulties with social processing and relatedness starting at an early age." Kwon, at 8. He lacks insight into the intentions of others. This can cause others to be irritated and frustrated with him and act with aggression. Given this lack of perception, Kenny would not likely grasp the intention of those with whom he interacts. This has made Kenny an easy target to be taken advantage of. Kwon, at 4. Kenny has been

robbed. Kwon, at 4. Kenny was repeatedly raped from ages 8-9 by his special needs school bus driver. PSR, at par. 57. Kenny has even been extorted recently, while at the ACC, during his detention on this case. Exh. 3.

Without question Kenny has had substantial challenges and adverse childhood experiences detailed in both Dr. Kwon's report and the PSR. In addition to what is discussed above, Kenny's mother exposed him to drugs in utero. His mother suffered from substance abuse; was homeless and unstable and not a part of Kenny's life. Kwon, at 5, 11. Kenny's father also has a history of abusing substances and was physically and emotionally abusive towards him. *Id*.

At age 3-weeks, Kenny's parents gave custody to his grandparents. PSR, par. 55. Kenny resided with his grandparents until his grandfather died when he was 5-years old. Thereafter, Kenny returned to residing with his father. By kindergarten, Kenny was exhibiting behavioral issues requiring an evaluation and his placement in a special education program under the educational category of autism. He had already been diagnosed with ADHD, PTSD, bipolar disorder and adjustment disorder. Kwon, at 3. By age 6, Kenny was diagnosed as suffering from autism spectrum disorder ["ASD"]. Kwon, at 4.

B. *Autism Spectrum Disorder*

Autism is a lifelong developmental disability that shapes how a person communicates with and relates to other people and makes sense of the world. The American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text

Revision (DSM-IV TR)[3] and Fifth Edition (DSM-V)[4] both define autism as one of five biologically-based "pervasive developmental disorders" which are characterized by delays or impairment in communication, social behaviors, and cognitive development.

Autism is a spectrum condition, which means that, while all people with autism share certain difficulties, their condition will affect them in different ways and with different degrees of severity. The difficulties that people with autism share are sometimes known as the "triad of impairments." They are: 1) difficulty with social communication; 2) difficulty with social interaction; and 3) difficulty with social imagination. In addition to the three areas of social impairment, people with autism may demonstrate a love of routines, sensory sensitivity, and intense special interests. They may also present with learning disabilities and other co-morbid diagnoses.

Despite the autism diagnosis, as a young child, Kenny did not receive the recommended autism treatment that could have mitigated the effects of the disorder:

> There is no cure for ASD; however, the effects may be mitigated by early and intensive treatment starting in preschool years. Kenneth did not benefit from such treatment even following diagnosis at 8 years of age. An evaluation at OHSU at age 9 resulted in extensive recommendations, including management of anxiety and mood issues, social skills therapy, and parent behavior modification training. It is unclear to this examiner to what extent any of these treatment recommendations, outside of the use of psychiatric medications, were subsequently pursued. His records show escalating behaviors during elementary middle school years, including the start of substance use identified by age 12, and he was eventually referred to intensive special education services. The absence of

---

[3] American Psychiatric Association. Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision. Arlington, VA; American Psychiatric Association, 2000.

[4] American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders, Fifth Edition, (May 27, 2013).

DEFENDANT'S SENTENCING
MEMORANDUM
*[No. 3:18-cr-00095-TMB-DMS]* - 5

services such as ABA therapy and intensive social skills therapy represented lost opportunities for Kenneth to make further progress with his neurodevelopmental and psychiatric symptoms that affect him to this day.

Kwon, at 9.

It is not surprising, given the impact of autism, that Kenny was drawn to and found appealing on-line computer hacking community because it addressed his social isolation. In that environment Kenny was able to make "friends" and gain some respect. Kwon, at 6-7. Coupled with his substance use discussed below, Kenny failed to consider consequences or impact of offense. Kwon, at 7.

Also, people on the autism spectrum can have average to high IQs.[5] But IQ tests do not evaluate executive functions, which include synthesis of information and other cognitive and emotional processes. Executive functions are typically performed by the frontal lobe. There is evidence of impairment in executive functioning in people on the autism spectrum.[6] In people on the autism spectrum, the inability to generalize—one of the manifestations of impairments in executive functioning—also manifests as a need to systematically process information, known as "systemizing."[7] "Systemizing" is best understood as a drive to identify the rules that govern the behavior of a system, in order to be able to predict it. In persons on the autism spectrum, the

---

[5] Kim, Y.S., et al. "Prevalence of autism spectrum disorders in a total population sample." American Journal of Psychiatry, (2011).

[6] Ozonoff, S., B. F. Pennington and S. J. rogers. "Executive function deficits in high-functioning Autistic individuals: relationship to theory of mind." Journal of Child Psychology and Psychiatry 32.7 (1991): 1018-1105

[7] Baron-Cohen, S., et al. "The systemizing quotient: an investigation of adults with Asperger syndrome or high-functioning autism and normal se differences." Philosophical Transactions: Biological Sciences 358.1430 (2003): 361-374.

DEFENDANT'S SENTENCING
MEMORANDUM
*[No. 3:18-cr-00095-TMB-DMS]* - 6

drive to systemize may be a strategy to compensate for the linguistic and social deficits. The need to systemize is frequently seen in autistic people as a love of routines and intense special interests.

The world can be a very unpredictable and confusing place to people with autism. A daily routine that includes an intense special interest provides a mechanism to cope. Kenny's focused energy on computers provided his compensation mechanism and an ability to deal with the stress.

C. *Other Co-morbid Diagnoses.*

Anxiety disorders, ADHD and depression frequently accompany diagnoses of autism spectrum disorders. Kwon, at 10. Kenny has been diagnosed with these and a variety of other conditions. Kwon, at 9.

D. *Substance Dependence.*

Succinctly put, "Substance use has had a catastrophic effect on Kenneth's life." Kwon, at 10. Dr. Kwon explains:

> Methamphetamine and other stimulants were extremely destructive for him. They allowed him to get high and hyper focus on things such as working on computers but also cause serve impairment and judgment, impaired sleep, grandiosity, and indifference towards consequences. His inability to refrain from substance abuse has led to numerous instances of severely impaired behavior, including computer-related criminal behavior …

**III. ILLEGAL COMPUTER CONDUCT AND PRETRIAL VIOLATIONS.**

Kenny understands his offense conduct and pretrial violations are unacceptable and his conduct is not excused either by the disorders from which he suffers or his adverse life experiences. He understands the computer crime he engaged in is not victimless. Kwon, at 8. In his offense statement submitted to probation, Kenny states:

> I understand computer crimes, like the crime I committed, cause harm and havoc to those directly impacted and are bad for the community. I know that the DDoS attacks I participated in disrupt networks and damage internet-based services, and can result in substantial financial losses to companies and individuals. I was wrong for having contributed to this problem. I am sorry for those who may have been negatively affected by my conduct.
>
> While this case has been pending, I recognize that I was fortunate to have been provided treatment opportunities to try to better myself and learn ways to overcome my developmental, emotional and substance abuse problems that have negatively impacted my life and have been contributing causes to my poor decision-making. Though I learned from the treatment and gained tools to help me in future, I realize I failed to fully take advantage of the opportunities provided me by the Court, the Government and Pretrial Services. For that I am most sorry. There is not a day that goes by that I do not think about the many bad decisions I have made. I am disappointed in myself. I know I must change and the change has to be now and forever.
>
> Due to my terrible lack of judgment in committing the offense, and my poor decisions while on pretrial supervision, I have lost my freedom. I appreciate and accept why that has happened. I have no one to blame but myself. I realize my behavior have been unacceptable. Once given the opportunity following my release, I am anxious to change my behavior. I will address my underlying problems head-on and start using my skills to be gain stability, employment and independence. I want to positively contribute to the community by being a responsible citizen.

Exhibit 1. Kenny wants to make this moment a defining one; one that pushes him past his prior poor decisions that have resulted in his incarceration. He is invested in succeeding in treatment if provided the opportunity. He recognizes his deficits and knows he needs to work to gain skills to never return to the behaviors that resulted in the charges and pretrial violations.

## IV.     SENTENCING PARITY.

A compelling factor in determining Kenny's sentence is the need for the Court to avoid unwarranted sentencing disparity among related defendants. 18 U.S.C. Section 3553(a)(6). This factor recognizes the need to ensure that Courts impose similar sentences for similarly situated individuals.

This Court recently imposed probationary sentences for four other defendants in related matters. The related cases are: *United States v. Josiah White, Paras Jha, and Dalton Norman,* Nos. 3:17-cr-00163-TMB, 3:17-cr-00164, 3:17-cr-00165, 3:17-cr-00166, and 3:17-cr-00167. All three defendants were involved in developing and deploying the Mirai botnet for DDoS attacks and there were contacts between these defendants and Kenny.

In the matter of *United States v. David Bukoski*, Case No. 3:18-cr-00154-TMB, the offense conduct is slightly different, but nevertheless, related to Kenny's case. Mr. Bukoski pled guilty to operating a DoS for-hire service, commonly known as a "booter" or "stressor." The relationship between David Bukoski and Kenny's case is discussed in the government's sentencing memorandum filed in the Bukoski case. Dkt. 93.

The relatedness of the four cases is the reason why the parties filed the Joint Notice of Related Cases. Dkt. 109.

Counsel concedes there may well be differences in the degree of cooperation provided by of defendants White, Jha, and Norman and their pretrial compliance. However, their offense conduct was identical. They served no jail, no community confinement and were not required to participate in structured living settings where their liberty is restricted.

Regarding Mr. Bukoski, his computer offense conduct was related, but different from Kenny's. However, like Kenny, he was involved in uncharged related conduct, including a swatting incident in Canada. *United States v. Bukoski,* Dkt. 109. Mr. Bukoski received a probationary sentence which included up to six months in a Community Confinement Center. The recommended sentence here is far more punitive, as it includes incarceration and greater restricted liberties.

## V.    LOCAL CRIMINAL RULE 32.1(e)(4) REQUIREMENTS.

Pursuant to the LCrR 32.1(e)(4)(A), there is no disagreement with the presentence report.

Pursuant to the LCrR 32.1(e)(4)(B), the sentence requested by the parties is a variance from the applicable sentencing range and the justification for the variance is fully discussed above.

## VI.    CONCLUSION.

The parties' agreed recommendation is "sufficient, but not greater than necessary" to achieve the goals of deterrence, protection of the public, and rehabilitation of the defendant, including "needed educational or vocational training, medical care or other correctional treatment in the most effective manner." Indeed, it is the sentence that best achieves these goals. It implements Dr. Kwon's treatment recommendations, and takes into consideration Kenny's vulnerability to abuse if imprisoned.

At the time of the offense, Kenny was between age 19 and 20, a young man. Given the circumstances, participation in treatment provided by Akeela Recovery House is fair and appropriate. Akeela is a long-term, highly structured program. Akeela works with individuals

like Kenny, who suffer from addiction and have co-occurring complex diagnoses. While there, Kenny will not have computer access. Once inpatient is completed, Akeela provides outpatient treatment and transitional housing. Akeela's program provides Kenny with the opportunity to gain the tools needed to address his problems.

Based on all the circumstances discussed above, the agreed recommendation is just.

DATED this 18 June 2020.

                                                s/ Barry Flegenheimer
                                                Barry Flegenheimer
                                                Attorney for Kenneth Currin Schuchman

# CERTIFICATE OF SERVICE

I certify that on June 18, 2020, the foregoing was served on opposing counsel, by the CM/ECF system. A copy of this memorandum was provided to the United States Probation by email at: john_schroeder@akp.uscourts.gov, Tim_Astle@akp.uscourts.gov, and Chris_Liedike@akp.uscourts.gov.

DATED this: 18 June 2020.

        s/ Melisa Wong
        Melisa Wong
        Legal Assistant
        BELL FLEGENHEIMER