BRYAN SCHRODER
United States Attorney

ADAM ALEXANDER
Assistant United States Attorney
Federal Building & U.S. Courthouse
222 West 7th Avenue, Room 253
Anchorage, Alaska 99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: Adam.Alexander@usdoj.gov

CATHERINE ALDEN PELKER
Trial Attorney
Computer Crime & Intellectual Property Section
1301 New York Avenue NW, Suite 600
Washington, DC 20005
Telephone: (202) 514-1026
Facsimile: (202) 514-6113
Email: Catherine.Pelker@usdoj.gov

Attorneys for Plaintiff

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Case No. 3:18-cr-00095-TMB-DMS |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| KENNETH SCHUCHMAN, | ) | |
| | ) | |
| Defendant. | ) | |

**GOVERNMENT'S DISPOSITION MEMORANDUM**

**SUMMARY OF THE DISPOSITION RECOMMENDATION**

**TERM OF IMPRISONMENT ………………………………..11 Months**

**SUPERVISED RELEASE ……………………………….. Three Years**

COMES NOW the United States of America, by and through undersigned counsel, and hereby files this Disposition Memorandum. For the reasons stated herein, the United States respectfully asks the Court to conduct an thorough colloquy regarding the defendant's competence for reasons stated below, and if found competent to proceed with the hearing, revoke the defendant's supervised release and impose a sentence of 11 months and one day of imprisonment, followed by an additional three-year term of supervised release.

## I.  INTRODUCTION

### a)  Summary

The defendant pleaded guilty to aiding and abetting computer intrusions in violation of 18 U.S.C. §§ 1030(a)(5)(A) and 2 and was sentenced by this court on July 17, 2020. ECF 129. That charge pertained to a long-running scheme in which the defendant and his co-conspirators developed distributed denial of service (DDoS)[1] botnets.[2] Initially, the botnets were based largely on the source code previously developed by other individuals to create the Mirai botnet familiar to the Court here. However, Mr. Schuchman and his associates added additional features over time, so that the botnets grew more complex and effective. At various times, these successor botnets were known as "Masuta," "Satori," "Okiru," and "Tsunami"/"Fbot." This court has already sentenced the three creators of the Mirai botnet: Josiah White, Paras Jha, and Dalton Norman.

---

[1] DDoS attacks occur when multiple computers acting in unison flood the Internet connection of a targeted computer or computers. The amount of traffic generated by such an attack quickly overwhelms the capacity of the target computer, resulting in the target computer being unable to send, receive, or respond to commands. DDoS attacks are often directed at servers that host websites, with the intent of rendering those websites unavailable to the public. They may also be directed at personal computers or corporate networks.

[2] A botnet is a collection of computers infected with malicious software and controlled as a group without the knowledge or permission of the computers' owners.

U.S. v. Kenneth Schuchman
3:18-cr-00095-TMB-DMS                    2

While the defendant and his co-conspirators utilized these successor Mirai variant botnets to conduct DDoS attacks themselves, their primary focus was selling access to paying customers in order to generate illicit proceeds. The defendant and his associates used an array of complex means to compromise the devices in order to force them to participate in botnets that then conducted DDoS attacks against separate victims.

### b) Post-Indictment Conduct

As described in greater detail in the Presentence Report, the defendant's performance on pretrial supervision was spectacularly poor. See PSR at 3-9. After his arraignment in the instant criminal case in August 2018, the defendant was released to pretrial supervision under conditions set by the court at Docket 12; over the next month, he flouted those conditions of release in spectacular fashion, by **continuing to create and operate a DDoS botnet** – the very conduct for which he had been charged, as will be described in greater detail below**.**

A brief description of the nature of those initial October violations referenced briefly in the PSR at 3 bears further description and is relevant to the court's consideration at Disposition of the pending Petition.

Shortly after the defendant was released on the conditions set out in the order at ECF 12, the FBI gained access to chats dated October 3, 2018, between the defendant and a co-conspirator using the nickname using the alias "ViktorLast Monday." The true identity of "Viktor" (also known as "Vamp") is known to the Government.

The chats begin with "Viktor" greeting the defendant by saying "hello Alaskan police," a reference to contemporary media coverage of the MIRAI conspirators who at that point had been recently sentenced by this court. The defendant responded "idk [I don't know] what's gonna happen im just playing dumb for now." "Viktor" asks the defendant "how much money is the fbi

U.S. v. Kenneth Schuchman
3:18-cr-00095-TMB-DMS                  3

paying you to inform?" to which SCHUCHMAN responds "im on house arrest . . . i said that i

did so many drugs i cant remember most events of late."

Later in the chat the defendant stated "i got a new phone too deleted all my gmail, twitter,

etc only kept disc imam make new alias." "Viktor" advises the defendant that he had seen his

"court docs" (conditions of release at ECF 12) and that he knows "your dad has to supervise your

comp use too well internet use." The defendant responded: "yes, but he doesn't care." "Viktor"

then sends SCHUCHMAN a link that is still live as of writing to a screen capture from his own

conditions of release in this case at ECF 12, copied below.[3]



The defendant responded by writing "ya lol [laughing out loud] i didn't know those were

public lol." Following that exchange, the defendant asks "Viktor" "do you trust discord" [the

chat service being used] before writing "we need to talk Like as one person to another There's

things you need to know I noticed a pattern in some things Ur [You're] gonna want to know And

I am not cooperating with them." The defendant then wrote "Serously [sic] if I made a deal to

cooperate I would not be allowed to talk to you let alone be open with everyone about what's

going on When I spoke to my attorney he said it might backfire on me that if I had signed

anything I'd he [be] in major shit for talking to anyone about an ongoing investigation."

The defendant then wrote shortly after "I'm not using a home connection and I'm with on

mobile or live USB of Debian," referring to his unsuccessful attempts to obfuscate his continuing

---

[3] https://cdn.discordapp.com/attachments/484359134041341952/491170205775560704/Screenshot_20180917-095443.jpg

criminal conduct while on supervised release.  The defendant then tells his co-conspirator

"Viktor," who suspected that the defendant was cooperating with law enforcement, "If anything

lm [I'm] hanging my neck out talking to you . . . Because it's the right thing to do."  "Viktor"

responds to the defendant's entreaties by stating "dude you're a compulsive liar and known

manipulator."

    As a result of the defendant's extensive pretrial release violations, the Court issued a

warrant and the defendant was re-arrested on October 19, 2018.  PSR at 3.   The defendant was

ultimately ordered released to an inpatient substance abuse treatment program on November 29,

2018; however, within a week of discharge from the program in February 2019, he tested

positive for Suboxone and was removed from his sober living residence.  PSR at 4. He

accumulated numerous drug-related violations in the ensuing months and was ultimately ordered

detained again on August 21, 2019. PSR at 5.  The defendant was subsequently released to

another residential treatment program on September 4, 2019, but was discharged from the

program a month later due to possession of drug contraband.  PSR at 6. The defendant then

absconded from pretrial supervision and was rearrested on November 21, 2019.  PSR at 7.

    The circumstances the defendant's pre-sentencing arrest while on abscond remain

troubling.  The management staff at the defendant's father's apartment complex, where the

defendant was residing while on abscond status, reported numerous complaints against the

defendant, including invitations to underage children to swim naked in the pool.  When the U.S.

Marshals Service (USMS) entered the apartment unit to apprehend the defendant, they found him

using a computer, in violation of his conditions of release.  Just prior to his arrest, Mr.

Schuchman "began hitting buttons on the keyboard," PSR at 8, and subsequently told his father

to destroy the computer.  Though the device was seized by USMS, the defendant had succeeded

in encrypting the device, and the defendant and his father have declined to provide the passwords needed to access the files contained therein, although efforts by law enforcement to access the laptop are ongoing. The defendant admitted to USMS that he had received and viewed videos of "juvenile[s[ engaging in sexual acts with other juvenile[s]" on the laptop, PSR at 9.

### c)    Post-sentencing conduct

The defendant was sentenced by the court to a "time-served" sentence as of August 1, 2020, on the condition that he be transferred directly to the Akeela inpatient treatment program and participate in that program as directed. ECF 131 (Judgment). The defendant as placed at Akeela on August 4, 2020, and began his three-year term of supervised release. A little more than one month later United States Probation filed the instant petition, alleging that the defendant had been discharged from Akeela as treatment non-compliant. ECF 134.

As detailed in the Disposition Report, the defendant reportedly consumed a bottle of hand sanitizer on or about September 6, 2020, and was subsequently transferred first to Providence Alaska Medical Center (PAMC) and then to a psychiatric bed at Matanuska-Susitna (Mat-Su) Regional Hospital in Palmer where he remained until September 14, 2020. ECF 153. That visit to Mat-Su Regional will be discussed in greater detail below, but upon his return to Akeela on September 14, U.S. Probation learned from Clinical Staff that the defendant had reported that he was being financially exploited by his father, Robert Schuchman, and that the defendant had also convinced clinical staff at Mat-Su Regional to print out pages of computer code during his stay, portions of which were seize by U.S. Probation and provided to the FBI for analysis. ECF 153 at 2.

//

//

Shortly after his return to Akeela, the defendant again expressed what can reasonably be described as manipulative claims of suicidal ideation to Akeela staff, and was subsequently discharged from that program and arrested on the petition filed at ECF 134. Id.

Upon review by FBI SA Elliott Peterson, the case agent in the defendant's matter and principal investigator of the predecessor Mirai botnet, the source code that the defendant convinced clinical staff to print for him during his stay at Mat-Su Regional did in fact prove to be related to the Mirai botnet, which is the subject of his underlying conviction. SA Peterson subsequently interviewed A.A., clinical staff at Mat-Su regional, who reported that she had been contacted by the defendant during his September stay and asked to access information on the internet and print it off for him.

According to A.A., she told the defendant that she did not believe he was allowed to access the internet, to which the defendant responded that as long as he didn't physically touch the computer it would be fine, and that he would direct her to the proper web page and instruct her as to what to download and print for him. The defendant, in an attempt to placate A.A., told her that he had previously made the same request of another, unidentified member of Mat-Su Regional's clinical staff. At this point, A.A., to her credit, contacted U.S. Probation and provided to them a printed page of code she had retrieved from the defendant's possession.

SA Peterson is prepared to testify regarding the conduct described above at the Disposition hearing currently calendared for Friday December 4, 2020. A draft 302 summarizing the interview with A.A. and SA Elliott's Jencks/26.2 statements relating to his anticipated testimony have been provided to counsel for the defendant, Ms. Franklin.

//

//

**d) Post-detention Conduct**

The defendant continued his pattern of troubling conduct after his arrest on the warrant issued in conjunction with the instant Petition, including a number of misrepresentations he made to his own attorney. In October, the Government was contacted by defense counsel to advise that the defendant was upset that he was not being transferred to Lima Mod, the mental health unit at the Anchorage Jail. U.S. Probation investigated the situation, and communicated to the Government and defense counsel on October 7, 2020 via email that the defendant was denied transfer to Lima Mod because he had in fact been tattooing individuals during his last stay in violation of DOC regulations. While housed in Bravo mod, the defendant apparently had no problems according to Probation other than "attempting to play staff off against each other," and at no point exhibited any symptoms of the purported depression and self-harm that had plagued his stay at Akeela and occasioned his treatment at PAMC and Mat-Su Regional the previous month.

On Tuesday, December 1, 2020, defense counsel advised the Government and Probation via email that she had been told by the defendant's father that the defendant had been "removed from all medication," and that as a result DOC was "threatening" the defendant's life and "hampering his ability to meaningfully assist" her at the scheduled December 4 adjudication/disposition hearing on the instant petition. U.S. Probation and USMS immediately reached out to DOC, and learned that the defendant was being tapered off of his Clonazapine prescription as a result of the fact that he had been caught "cheeking" (or attempting to smuggle) medication out of the medical unit, presumably for sale to other inmates. Upon receiving an ROI from defense counsel, USMS provided medical reports to the parties corroborating this allegation and detailing that the defendant had been observed "shoving his tongue between top

lip and teeth" even after having been warned regarding his attempts to smuggle controlled

substances out of the medical unit after "multiple" similar incidents occurring in the same week.

## II.     COMPETENCY

As described above, defense counsel raised concerns with the government and U.S.

Probation in a December 1 email regarding the defendant's ability to meaningfully assist in his

own defense based on the representations made by his father regarding his medication.  The

government, U.S. Probation and USMS took these concerns extremely seriously, resulting in the

disclosure of the medical records documenting the defendant's recent malingering.  Subsequent

to the release of the records, defense counsel advised in a email sent on December 2 that she had

spoken with the defendant, that he "sounds all right," and that he is "able to communicate . . .

about the charges and . . . assist in his defense," but expressed continued concerns that the

defendant is not being appropriately medicated, despite the fact that he has been caught on

numerous occasions attempting to smuggle the medication in question out of the medical unit.

While the government is not making a motion at this time pursuant to 18 U.S.C. §

4241(a), the concern remains given the nature of representations made by defense counsel in the

December 1 email, as modified by the subsequent email the following day, given the fact that

"[i]t is not enough for the district judge to find that the defendant is oriented to time and place

and has some recollection of events, but that the test must be whether he has sufficient present

ability to consult with his lawyer with a reasonable degree of rational understanding-and whether

he has a rational as well as factual understanding of the proceedings against him." U.S. v.

Hoskie, 950 F.2d 1388, 1392 (9th Cir. 1991) (quoting Dusky v. U.S., 362 U.S. 402 (1960)

(internal punctuation omitted)).

U.S. v. Kenneth Schuchman
3:18-cr-00095-TMB-DMS                                  9

See also <u>U.S. v. Dreyer</u>, 705 F.3d 951 (2013) (holding that the district court's failure to sua

sponte order a competency hearing constituted plain error when the defendant was incapable of

assisting in his defense and the record included a mental illness diagnosis.).

## III.    DISPOSITION

### a)    U.S. Probation Recommendation

United States Probation recommends a low-end guideline on the sole allegation alleged

relating to the defendant's discharge from Akeela in-patient treatment in violation of Special

Condition 2 of the Judgement at ECF 131.  ECF 153.   U.S. Probation also recommends a

transfer to the Western District of Washington so that the defendant can reside with his father.

<u>Id.</u> at p.5.[4]

### b)    Recommendation of the United States

As detailed above, the defendant has a willful and dramatic history of non-compliance

with the law and court orders, including a pattern of engaging in the same type of criminal

conduct alleged in his indictment both before and after his sentencing, despite repeated

opportunities provided by this court to engage in substance and mental health treatment.  The

nature, seriousness, and frequency of the defendant's violations while on pre-trial supervision,

and following his release indicate that his recidivism is a matter of his own choice, and not the

function of either his substance abuse or mental health diagnoses, both of which have been

proven to be manipulated by the Defendant to facilitate his own continued criminal conduct.

Given the egregiousness of his history in this matter, the United States recommends a high-end

guideline on the sole violation alleged in the petition and that the defendant be subsequently

returned to supervision for an additional term of three-years.

---

[4] The government opposes the recommendation to eventually place the defendant in his father's custody, see ECF 153, p.2, referencing the Adult Protective Services report filed by Mat-Su Regional clinical staff.

## IV. CONCLUSION

For the above-stated reasons, the United States respectfully recommends a high-end guideline sentence of 11 months, to be followed by a three-year term of supervised release.

RESPECTFULLY SUBMITTED this 3rd Day of December, 2020, in Anchorage, Alaska.

BRYAN SCHRODER
United States Attorney

s/ Adam Alexander
ADAM ALEXANDER
Assistant United States Attorney
United States of America

**CERTIFICATE OF SERVICE**
I hereby certify that on June 18. 2020,
a true and correct copy of the foregoing
was served electronically via
the CM/ECF system on the following:

Cindy Franklin, CJA Counsel

s/ Adam Alexander
Office of the U.S. Attorney